UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELVIN ALICEA-IRIZARRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CARLOS MOLINA-RODRIGUEZ, et al.,<br><br>Defendants. | Civil No. 12-1623 (JAF) |

**OPINION AND ORDER**

In this case, Elvin Alicea Irizarry, Luis A. Ocasio-Montañez, Edward García-Soto, Zaida Ocasio-González, Mariluz Acevedo-Pérez, and Luis A. Marrero-Caraballo ("Plaintiffs") allege that Carlos Molina-Rodríguez and Jesús González-Cruz ("Defendants) violated their federal First Amendment rights and their state rights under tort law by engaging in political discrimination. (Docket No. 1.) We must decide whether the Plaintiffs' pleadings survive a motion to dismiss. (Docket No. 28.) We find that they do. For this reason, we deny Defendants' motion to dismiss.

**I.**

**Background**

When considering a motion to dismiss, we must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. Rodríguez-Ramos v. Hernández-Gregorat, 685 F.3d

34, 39-40 (1st Cir. 2010) (citation omitted). Therefore, to the extent that any facts are disputed, the facts set forth below represent Plaintiffs' version of the events at issue.

Plaintiffs were employed by the Puerto Rico Department of Corrections ("PRDCR"), and were all originally hired between 1984 and 1992. (Docket No. 1 at 2.) Since winning their state court case, they have been reinstated as wardens ("superintendentes") with the PRDCR. (Docket No. 44). They are all active members of the Popular Democratic Party ("PDP"), except one plaintiff, Luis A. Marrero-Caraballo ("Marrero"), who was not active but had close ties to PDP members. (Docket No. 1 at 3.) Defendants are the former and current Secretary of the PRDCR, and are both members of the New Progressive Party ("NPP"). (Docket No. 1 at 2,.) The Secretary is the nominating authority for the PRDCR, with the exclusive legal authority to hire and demote employees. Id.

Plaintiffs were appointed to the position of warden after July 1, 2008. The warden position is the highest-ranking career position within the PRDCR, and Plaintiffs exceled in the performance of this position. All Plaintiffs, except Marrero, are active members of the Popular Democratic Party ("PDP"). Marrero was told by trust personnel of the PRDCR that he was considered to be a PDP member because of his friendship and close ties with other employees affiliated with the PDP. (Docket No. 1 at 3.) Between 2009 and 2010, Defendant Molina demoted all the Plaintiffs, saying that their appointments were null pursuant to Joint Resolutions 56 and 57 of the 2008-2009 General Budget for the Commonwealth of Puerto Rico. Id.

In 2011, the PRDCR issued several job announcements to fill warden positions. They were not posted throughout the agency, as required by law. Despite the inadequate notice, all the plaintiffs applied for warden positions. Plaintiffs were qualified, as they had already undergone the appointment procedure and held those positions in the past. Id. Interviews were announced on short notice and held on August 2, 2011, a day in which the Governor of Puerto Rico had decreed a weather emergency. On August 10, 2011, the day Plaintiffs were called for a second interview, defendant Molina began filling the warden positions by appointing well-known NPP members. Plaintiffs have personal knowledge of the appointees' political affiliations. Some of the hired candidates have run for office as NPP candidates. Defendant Molina resigned to pursue political office and was replaced by Defendant González, who finished filling the available warden positions. Defendants hired candidates that were less qualified than Plaintiffs, and even hired candidates that did not meet the minimum requirements for appointment. Two appointees, both NPP members, did not meet the minimum supervision experience requirements required for the position. Every one of the warden positions were filled with NPP activists. Plaintiffs are equally and in most cases better qualified than the appointees. (Docket No. 1 at 4).

On August 3, 2012, Plaintiffs filed a complaint in our court. (Docket No. 1.) Plaintiffs alleged that Defendants violated their First Amendment rights by politically discriminating against them. Plaintiffs also alleged that Defendants violated Puerto Rico tort law. Plaintiffs requested compensatory damages for loss of earnings, pain and suffering, pre- and post-judgment interests, as well as punitive damages and attorney's

fees. They also demanded punitive damages taxed to Defendants in their individual capacities, and demanded injunctive relief in the form of their appointment to the warden positions. (Docket No. 1 at 5-6).

On August 2, 2013, Defendants filed a request for abstention. (Docket No. 26.) The same day, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and (c). In this motion, they also argued for qualified immunity in their individual capacities. (Docket No. 28.) Plaintiffs opposed these motions on August 14, 2013. (Docket No. 30.) Defendants replied to Plaintiffs' response on August 27, 3013. In this reply, Defendants withdrew their request for abstention. (Docket No. 33). On October 7, 2013, Plaintiffs filed a motion to supplement their prior opposition to Defendants' motion. In this motion, Plaintiffs brought to our attention one of our own recent cases, Sastre-Fernández v. Superintendencia del Capitolio, which they claim is similar. ___ F. Supp.2d ___, 2013 U.S. Dist. LEXIS 138865 (D.P.R. 213). (Docket No. 42.) Defendants replied to this motion on October 22, 2013. (Docket No. 43.)

Plaintiffs successfully challenged the annulments of their appointments in a separate action before the courts of the Commonwealth of Puerto Rico (Civil Case No. KPE2010-1284) and were all reinstated. (Docket No. 44.) On December 6, 2013, the parties jointly filed a proposed pretrial order clarifying the contours of the case in our court. Id. In this filing, Plaintiffs admitted that their claims for back pay and injunctive relief have become moot, but stated that their claims for emotional damages and for punitive damages against the individual-capacity defendants remain.

## II.

## **Analysis**

**A.     Motion to Dismiss**

A plaintiff's complaint will survive a motion to dismiss if it alleges sufficient facts to establish a plausible claim for relief. See Fed.R.Civ.P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff.   Rodríguez, 685 F.3d at 39–40 (citation omitted). Fed.R.Civ.P. 12(c) simply allows for the same process once pleadings are closed.  "The standard for evaluating a Rule 12(c) motion … is essentially the same as that for deciding a Rule 12(b)(6) motion." Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 22 (1st Cir. 2007) (quoting Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005)).

**B.     First Amendment Political Discrimination**

Defendants argue that Plaintiffs have not alleged "specific acts necessary to sustain the claim that each of the defendants had knowledge of each of the plaintiffs' political affiliation, or that the defendants had opposing affiliations to those of plaintiffs." (Docket No. 28) (sic).  In their analysis, Defendants argue that the allegations fail to satisfy prima-facie requirements for a political discrimination case. Id.  That prima-facie standard requires Plaintiffs to show (1) that they and Defendants have opposing political affiliations; (2) that Defendants have knowledge of Plaintiffs' affiliation; (3) that a

challenged employment action occurred; and (4) that political affiliation was a substantial or motivating factor behind the challenged employment action. Martin-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir. 2007).

However, the prima-facie standard "is an evidentiary standard, not a pleading standard." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). While "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim," they need not be pled with exactness. Id. A sufficient pleading needs to state only a plausible claim, not "a detailed evidentiary proffer." Id.

The burden is on Plaintiffs to show discrimination based on political affiliation. Government employees who are in in "policy-making positions of confidence" cannot suffer adverse employment decisions based on their political affiliations. Borges Colon v. Roman-Abreu, 438 F.3d 1, 14 (1st Cir. 2006). To establish a cause of action, Plaintiffs must produce "sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiffs' constitutionally protected conduct…was a 'substantial' or 'motivating' factor behind their dismissal." Id. at 15 (internal citations omitted). Then Defendants carry the burden to establish a nondiscriminatory reason for the adverse employment action. Id. The Mt. Healthy doctrine provides an affirmative defense when the Defendant can show "both 1) that it would have taken the same action in any event, and (ii) that it would have taken that action for reasons that are not unconstitutional." Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle, 429 U.S. 274, 286-287 (1977) (reaffirmed in Borges, 438 F.3d 1 (1st Cir. 2006)). In Borges, however, one relevant factor for the decision in the plaintiffs' favor was testimony that most, if not all, of the workers hired to

replace the plaintiffs were affiliated with the party in power. 438 F.3d at 17. This is similar to the allegations in this case. (Docket No. 1.)

Defendants also argue that Plaintiffs have not offered factual allegations to distinguish any equal protection claim from their political discrimination claims. (Docket No. 28.) This is not a requirement. Finally, Defendants argue that Plaintiffs failed to list individual actions by Defendants that "deprived [them] of [their] constitutional rights." Id. This belies the record, which details the annulment of Plaintiffs' appointments and the Defendants' allegedly-discriminatory hiring practices. (See Docket No. 1.)

Evaluating the facts in the light most favorable to the Plaintiffs, we find that there is enough circumstantial evidence alleged for a jury to reasonably infer that the Plaintiffs' political speech was a substantial or motivating factor behind their dismissal. Therefore, we decline to dismiss this cause of action.

**C.   Puerto Rico Tort Law**

The Defendants argue that we should decline to exercise jurisdiction over Plaintiffs' supplemental state law claims. (Docket No. 28). Because we have declined to dismiss the federal law claims, we also decline to dismiss the state law claims.

**D.   Qualified Immunity**

Defendants argue that they are entitled to qualified immunity in their individual capacities. The Supreme Court recently restated the inquiry for qualified immunity. A court must decide, in no particular order: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. Cordell Pearson v.

Callahan, 555 U.S. 223, 231-36 (2009).  The Supreme Court has emphasized that either step of the analysis can be tackled first.  Id.  The relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (internal citations omitted).  A reasonable public official would have known in this situation that employment discrimination on the basis of political affiliation was unlawful.  Therefore, we decline to grant the Defendants qualified immunity.

## III.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Docket No. 28) is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 13th day of December, 2013.

                                                                    S/José Antonio Fusté
                                                                      JOSE ANTONIO FUSTE
                                                                      U. S. DISTRICT JUDGE